659 F.2d 396
 EMPIRE-DETROIT STEEL DIVISION OF CYCLOPS CORPORATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
The Baltimore and Ohio Railroad Company (B&O) and Norfolk
and Western Railway Company (N&W), Intervenors.
 No. 80-2790.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Sept. 15, 1981.
Decided Sept. 28, 1981.
 
 Jeffrey A. Vogelman, Russell R. Sage, Major, Sage & King, Alexandria, Va., for petitioner, Empire-Detroit Steel Division of Cyclops Corp.
 Richard A. Allan, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, Laurence H. Schecker, Atty., I.C.C., Washington, D.C., for respondent, I.C.C.
 William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Kenneth P. Kolson, Attys. Dept. of Justice, Washington, D.C., for respondent U.S. of America.
 John J. Paylor, Cleveland, Ohio, Richard W. Kienle, Roanoke, Va., John M. Phelan, Morgan, Lewis & Bockius, Philadelphia, Pa., for intervenors, The Baltimore and Ohio R.Co. and Norfolk Western R.Co.
 Before GIBBONS and HUNTER, Circuit Judges, and GERRY*, District Judge.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 This case is a petition for judicial review of the decision of the Interstate Commerce Commission in Docket No. 37347F, Empire-Detroit Steel Division of Cyclops Corp. v. Baltimore & Ohio Railroad Co. (Review Board Number 4), which dismissed the complaint of Empire-Detroit for relief from penalty demurrage charges on 353 carloads of coal, iron ore pellets, and limestone which could not be unloaded promptly because the ladings were frozen. The parties agree that because the decision involves a challenge to the legal bases of the Commission's action we have jurisdiction under 28 U.S.C. §§ 2321(a) and 2342. See Island Creek Coal Sales Co. v. ICC, 561 F.2d 1219 (6th Cir. 1977); Monongahela Power Co v. ICC, 640 F.2d 504 (4th Cir. 1981). But see Genstar Chemical Ltd. v. ICC, 491 F.Supp. 391 (D.D.C.1980), appeal pending, No. 80-1170 (D.C. Cir. Feb. 11, 1980) (petition for review of ICC order). We agree with those courts of appeals which have held that review of orders denying reparations on legal or policy grounds is available by petition for review in the courts of appeals.
 
 
 2
 Railroads assess demurrage charges when shippers hold railroad cars for loading or unloading longer than a specified period of free time. Demurrage charges for this case are specified in Freight Tariff 4-K, ICC H-74, General Car Demurrage Rules and Charges, G.S. Trzaska, Agent, effective July 1, 1977. This nationwide tariff offers two alternative methods of computing demurrage straight demurrage and the average agreement. Under straight demurrage cars detained beyond free time incur debits at an increasing daily rate. The straight demurrage tariff provides for specified additional free time for delays caused by frozen lading, bad weather, or bunching of car deliveries, but affords no credit for cars released early. Under the average agreement there is a provision for offsetting debits incurred on cars held beyond free time with credits earned on cars released before the expiration of free time. The average agreement affords two extra days of free time for frozen lading provided the shipper certifies within ten days its efforts to unload the cars.
 
 
 3
 Demurrage charges include a compensation portion related to the railroads' losses from detention and a penalty portion designed to encourage prompt release of cars. Under straight demurrage the Commission has usually relieved the shipper from the penalty portion of the demurrage charge if it shows that detention beyond free time was caused by conditions beyond control such as bunched deliveries or severe weather conditions and that it took all reasonable steps to minimize the accumulation of demurrage. In contrast to straight demurrage, the average agreement, as interpreted by the Commission, bars any demurrage relief for bunching or weather conditions. The only relief available to a shipper which is a party to an average agreement is credits earned for early release of other cars.
 
 
 4
 To enter into an average agreement a shipper files an application with the carrier which upon approval becomes a contract, cancelable by either shipper or carrier on written notice. Empire-Detroit is a party to an average agreement with the intervenors, Baltimore and Ohio Railroad Company and Norfolk and Western Railway Company. In the winter of 1977-78 Empire-Detroit encountered at the Portsmouth, Ohio steel mill a prolonged period of unusually severe weather during which ladings of coal, iron ore, and limestone were so frozen that normal methods of thawing them so that they could be unloaded were ineffective. Despite extraordinary efforts to unload the cars, substantial demurrage debits were incurred, in excess of any credits available for early releases. Demurrage charges for the winter of 1977-78 totalled $115,480. The complaint seeks remission of the penalty portion of these charges on the ground that the delays were due to weather conditions beyond the shipper's control, and that the shipper took all reasonable steps to prevent accrual of demurrage. Consistent with its longstanding policy, the Commission held that such relief is unavailable to a party to an average agreement.
 
 
 5
 In the petition for review Empire-Detroit challenges the Commission's interpretation of the tariff as well as the reasonableness of the policy judgment behind that interpretation. The Commission and the intervenor railroads urge that the interpretation is both correct and sound. They point out that for over ten years Empire-Detroit enjoyed the benefits of credits against demurrage debits for early returns. During that time the Commission made it clear that remission of penalty demurrage charges in cases of weather interference or frozen lading was available only under the straight demurrage tariff, but the shipper elected not to terminate the average agreement. Now, when bad winter reduced the benefit of the average agreement it seeks to be treated as if the agreement had been terminated.
 
 
 6
 In Monongahela Power Co. v. ICC, 640 F.2d 504 (4th Cir. 1981), the Court of Appeals for the Fourth Circuit in a carefully reasoned opinion held that the Commission's policy, consistently applied, of refusing to order reparations of penalty demurrage to parties to an average agreement was neither arbitrary, nor capricious, nor an abuse of discretion. We can add nothing to what is said in that opinion.
 
 
 7
 The petition for review will be denied and the Commission's order affirmed.
 
 
 
 *
 Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation